**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

NELLIE FRANCIS

VS. CA 04-04T

PROVIDENCE SCHOOL BOARD

**MOTION FOR SUMMARY JUDGMENT**

Defendant Providence School Board hereby requests that this Court grant its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and the Local Rules. In support of this Motion, Defendant relies upon the: (1) Statement of Undisputed Facts with Affidavit of Donald W. Zimmerman and Exhibits, filed herewith; and (2) Memorandum in Support of Motion for Summary Judgment with Affidavit of Debra DeCarlo and Exhibits, filed herewith.

Dated: 17 March 2005

Respectfully submitted,

Sara A. Rapport (Bar. No. # 6184)
City of Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740, Ext. 385
(401) 351-7596 (Facsimile)

32

**CERTIFICATION**

I hereby certify that I mailed a copy of the within Motion for Summary Judgment by U.S. mail, postage prepaid, to Ms. Nellis S. Francis, 16 Miller Avenue, Providence, Rhode Island 02905 on 17 March 2005.

Sara A. Rapport

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**NELLIE FRANCIS**

**v.** **CA 04-04T**

**PROVIDENCE SCHOOL BOARD**

# MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. The Legal Standard.

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. See id. at 735. Once it does so, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court deciding the motion views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

## II. The Record Is Devoid Of Any Genuine Issue of Material Fact.

To be afforded the protection of the Americans with Disabilities Act ("ADA") and the Rhode Island Fair Employment Practices Act, Ms. Francis must be able to demonstrate that she is a qualified individual with a disability.[1] In other words, she must show that she has a disability recognized by these statutes and is able to perform the essential functions of her job as a teacher for the School Department ("Department"), with or without reasonable accommodations. See 42 U.S.C. § 12111(8); Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 24 (1st Cir. 2002). The undisputed facts do not support this claim.

### A. Ms. Francis is Not an Individual with a Disability

In order to qualify as an individual with a disability, Ms. Francis must show that she suffers from a physical impairment that substantially limits one or more of her major life activities, or that she has a record of or the Department regards her as having such impairment. See 42 U.S.C. § 12102(2). To be "substantially limited in any activity," Ms. Francis must be unable to perform the activity or be significantly restricted as to performance of these tasks. See 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added).

The United States Supreme Court has determined that to be "substantially limited," an individual's impairment must prevent or severely restrict her from doing activities that are of "central importance to most people's daily lives. The impairment must also be permanent or long-term." See Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). In Toyota, the Court found that a medical

[1] In its definition of "disability," the Rhode Island Fair Employment Practices Act ("FEPA") includes "any disability which is provided protection under the Americans with Disabilities Act." R.I. Gen. Laws § 28-5-6(4). Thus, any reference to the "ADA" in this document applies to FEPA as well. The Rhode Island Civil Rights Act, also set forth as a basis for Ms. Francis's claim, follows state and federal employment law. See Rathbun v. Autozone, 361 F.3d 62, 71 (1st Cir. 2004).

condition that caused an individual "to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances," simply did not constitute a substantially limiting condition, because "these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual-task disability as a matter of law." Id. at 202.

Ms. Francis claims to suffer from some type of physical impairment. Even assuming this to be the case, she cannot show that such impairment meets the definition of a "disability" set forth in Toyota. It appears plain from the letter submitted by Dr. Huntington on her behalf, dated 4 June 2002, that whatever her physical impairment, it does not rise to the level of one that substantially limits a major life activity: Ms. Francis is able to stand, walk, sit, bend and lift. That she may have some difficulty sitting for prolonged periods of time, or lifting more than ten pounds is of no moment legally. She is not "substantially limited" in any major life activity. Consequently she is not "disabled" within the meaning of ADA. See id. at 195.

**B. Even if Ms. Francis were an Individual with a Disability, She is not a "Qualified" Individual with a Disability.**

Even if Ms. Francis were disabled under the ADA, the Department was not required to accommodate her as requested because Ms. Francis was unable to perform the essential functions of her position, and accordingly was not a qualified individual with a disability.

**1. Request to arrive one half hour late daily**

To be protected by the ADA, Ms. Francis must demonstrate not only that she has a disability, but also that she can perform the essential functions of the position, with or

without reasonable accommodation (and hence is a "qualified person with a disability"). See 42 U.S.C. § 12111(8). The essential functions of a position are the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n).[2] The ADA does not require that employers, as a reasonable accommodation, eliminate essential functions of the employee's position. See Feliciano v. State of Rhode Island, 160 F.3d 780, 785 (1st Cir. 1998); see also Davis v. Florida Power & Light Co., 205 F.3d 1301 (11th Cir 2000).

An employee who cannot meet the attendance and timeliness requirements of the job at issue cannot be considered a "qualified individual protected by the ADA." See Earl v. Mervyns, 207 F.2d 1361, 1366-67 (11th Cir. 2000); Tyndall v. Nat'l Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994); Flocker v. Sparrow Hosp., 2003 U.S. Dist. LEXIS 9667 (W.D. Mich. 2003); Salmon v. Dade County School Bd., 4 F. Supp.2d 1157 (S.D. Fla. 1998). An inability to arrive at the beginning of the workday thus constitutes an inability to perform an essential function of the job.

Ms. Francis requested that she be permitted to arrive at school one-half hour late each day.[3] Ms. Francis cannot show that her need to arrive late was driven by or related

---

[2] Factors to examine in determining whether a job duty is essential include: whether there is a limited number of employees who can perform the job, 29 C.F.R. § 1630.2(n)(2)(ii); the employer's judgment regarding which functions are essential, 29 C.F.R. § 1630.2(n)(3)(i); the consequences of not requiring the individual to perform the duty, 29 C.F.R. § 1630.2(n)(3)(iv); and the work experience of others in the same position, both past and present, 29 C.F.R. §§ 1630.2(n)(3)(vi), (vii).

[3] Ms. Francis did not personally request that she be permitted to arrive one-half late each day; rather, the note from Dr. Huntington, dated 4 June 2002, makes such request on her behalf. Dr. Huntington also appears to have signed a note, dated 13 November 2001, in which the following is written: "6 hrs a day max." (Zimmerman Aff. at ¶ 23 & Exhibit 10). Generously construed, this note, in conjunction with the June 2002 letter, suggests that Ms. Francis was requesting that she be permitted to work no more than six hours per day. As discussed infra, the high school teachers' day extends from 8:15 a.m. to 2:45 p.m. It bears emphasizing, however, that no teacher is on duty for this entire period of time. Under the collective bargaining agreement, teachers each day have a one-half hour lunch break, with no responsibilities, CBA Art. 8-2-2, and one unassigned period, during which they need not even be present in the building. See CBA Arts. 8-4.2 & 8-4.4. (Zimmerman Aff. at ¶ 23 & Exhibit 11). Hence, the amount of time teachers must actually be "on duty" during the day on any given day is less than six hours.

to her medical condition. Even if Ms. Francis could show this, however, her claim must fail because timeliness is an essential function of the job of high school teacher. Ms. Francis is thus not a "qualified" individual with a disability.

Salmon v. Dad County School Bd., supra, is right on point. The plaintiff in Salmon was a guidance counselor at a school serving low-income, socially and emotionally deprived students. She suffered a back condition, a permanent partial disability of chronic lumbosacral strain. After driving her car for long periods, she needed to stretch and rest her back. She sought to be permitted to arrive at work five to twenty-five minutes late so that she could do so after the car ride. 4 F. Supp.2d at 1158-59. The school principal denied the request, on the ground that regular and punctual arrival was necessary to serve the needs of the children: "Salmon was told that the need for regular and punctual counseling services was essential because the counselor must address problems that occur on an emergency basis, as well as regularly-scheduled matters." Id. at 1159.

The district court endorsed the principal's reasoning:

> Unlike other jobs that can be performed off site or deferred until a later day, a guidance counselor counsel [sic] must counsel students at the school during the hours in which the children are in attendance. . . . When a guidance counselor is absent or tardy, no substitute is available so counseling services are simply not provided. Another reason for regular and punctual counseling services is that the counselor must be available to address problems of an emergency nature.

Id. at 1162.

Similarly, here, all Department high school teachers are required to arrive at the same time and to work the same length day. The Collective Bargaining Agreement ("CBA") in effect in August 2002 defines the school day for a high school as from "8:30 a.m. - 2:30 p.m." and mandates that "[t]eachers shall be present at least 15 minutes before

the school day begins and shall remain at least 15 minutes after the school day ends." CBA, Art 8-5.2 (Affidavit of Debra DeCarlo [hereafter "DeCarlo Aff."] at ¶ 7 & Exhibit B, emphasis added). The day for teachers thus begins at 8:15 a.m. and ends at 2:45 p.m.

Upon arrival at school, high school teachers have a brief but important period of time (30 minutes), before their first assignment, during which they must to be accessible to students. (DeCarlo Aff. at ¶¶ 8-10). There can be no exceptions. (DeCarlo Aff. at ¶¶ 14-15). The Department could not leave Ms. Francis's room without certified staffing until her late arrival at 8:45 or 9:00 a.m. Such a situation would compromise safety and security at a time of day when difficulties among students are more likely to develop. (DeCarlo Aff. at ¶ 13). It also would deprive students of important educational and informational staffing. (DeCarlo Aff. at ¶¶ 14-15). Consequently, it is essential that all teachers, including Ms. Francis, arrive on time, and at the same time -- so essential that the Department negotiated the arrival time into the CBA. (DeCarlo Aff. at ¶¶ 6-7 & Exh. B). Punctuality is a matter of established practice and necessity.

Because the responsibilities Ms. Francis would avoid by arriving one-half hour late are only performed first thing in the morning, they cannot be reallocated to later parts of the day, to allow her to arrive late. See Salmon, 4 F. Supp.2d at 1160-61. Nor can she perform these duties at home. See Tyndall, 31 F.3d at 213. Arriving late is therefore not a reasonable accommodation. Ms. Francis's need to arrive late for work, if real, amounts to an inability to perform the essential functions of her position. Cf. Shea v. Tisch, 870 F.2d 786, 788-90 (1st Cir. 1989) (employers not required under ADA to offer "light duty" work if they do not regularly offer such work); Turco v. Hoechst Celanese Corp, 101

F.3d 1090, 1094 (5th Cir. 1996) (same); Cochrum v. Old Ben Coal Co., 102 F.3d 908, 912-13 (7th Cir. 1996) (same).

**2. Request for full-time aide**

Ms. Francis also requested a full time aide. This is not a reasonable accommodation. The purpose of a teachers' aide is to benefit the children, not the teacher. Full time teachers' assistants are provided in special education classrooms to assist students with learning disabilities. The Department may also afford such help to a teacher personally when his/her situation is exceptional or extreme. Ms. Francis's physical condition falls far short of such exceptionality.

The purpose for which Ms. Francis requested a full time teachers' aide could have been satisfied by her calling for assistance as the need arose. The Department repeatedly advised Ms. Francis that the Central High School administrators would make available a custodian or other staff member when she sought to complete a physical task that she perceived her condition would prevent her from doing, or doing comfortably. (Statement of Undisputed Facts at ¶¶ 7-8; Zimmerman Aff. at ¶¶ 12 & 13 & Exhibits 3 & 4 and ¶ 19 & Exhibit 7). Ms. Francis was, in short, afforded all the assistance legally required – and then some – to perform her job. That she did not want to work at all is a burden that neither the taxpayers nor the students of Providence should be forced to bear any longer.

**III. Conclusion**

The plaintiff has raised no genuine issue of material fact. The defendant therefore asks that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

Sara A. Rapport # 6184
City of Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740, Ext. 385
(401) 351-7596 (Facsimile)

**CERTIFICATION**

I hereby certify that on 17 March 2005, I sent via first-class mail, postage prepaid, a copy of the within Memorandum in Support of Motion for Summary with Affidavit of Debra DeCarlo & Exhibits to Ms. Nellie Francis at 16 Miller Avenue, Providence, Rhode Island 02905

Sara A. Rapport