**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**NELLIE FRANCIS**

**v.** **CA 04-04T**

**PROVIDENCE SCHOOL BOARD**

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Nellie S. Francis hereby opposes the *Defendants' Motion For Summary Judgment,* which was filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff, Francis in support of this motion relies upon the (1) Statement of Disputed facts with her Affidavit and Exhibits herewith and (2) memorandum in opposition for summary judgement with my Affidavit and Exhibits filed herewith.

RESPECTFULLY SUBMITTED:

NELLIE S. FRANCIS
PLANTIFF PRO-SE SE.
16 MILLER AVENUE
PROVIDENCE, R.I. 02905
(401)461-2918

**CERTIFICATION**

I hereby certify that I mailed a copy of the within **Motions** Objection for Summary Judgment to Sara A. Rapport Senior Assistant City Solicitor on April 13, 05

275 Westminster Street, Suite 200

Providence, Rhode Island 02903-1845

47

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**NELLIE FRANCIS**

**v.** **CA 04-04T**

**PROVIDENCE SCHOOL BOARD**

**PLAINITIFF'S MEMORANDUN IN SUPPORT OF PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Nellie S. Francis hereby opposes the *Defendants' Motion For Summary Judgment*, which was filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, the Plaintiff relies upon his *Memorandum In Opposition To Defendants' Motion For Summary Judgment*.

Plaintiff is alleging that Defendants have failed to failed to provide a reasonable accommondation under the Americans with Disabilities Act("ADA") and the Rhode Island fair Employment Practice Act("FEPA")

In violation of the Rhode Island with the Americans with Disabilities Act("ADA")

## 1. FACTS, CLAIMS AND DEFENSES

This is an action for discrimination against the disable, requesting a reasonable accommodation, as well offer and requested the other part , but was never answered by defendants, instead, my Counsel Haupt decided to withdraw on the grounds that defendants have threatened to terminate my Job(Biology) position if I refused the offer. Defendants never did respond to my request for the other part of the offer, instead Defendant discriminated against me again by terminating my Biology teaching Position with out a Just cause as receiving/refunding monies that were deducted from me., and reasonable attorney and pro se fees. The incident that led to the filing of this complaint took place on October 5, 1998 at the Hope High School in Providence, Rhode Island, when I was going to teach a laboratory Biology class. While I was going to the Class room traveling on the stairs, I was pushed down the stairs by three students. As a result of said incident suffered, and sustained injuries to my Left side, left thigh, left arm, low and upper back as well as injury to my neck. As a result of this injury, I was diagnosed with herniated disc and spinal cord compression. I was on medical leave for four and half years, recovering from said injuries. I was a candidate for lower, upper back , and neck injuries. I received Workers compensation benefits from October 1998 to September 2002, when I Returned to the work Place at Central High School.

As a result of my injuries, I was placed on a restricted work by my doctors. My doctors have given me a medical excuse with restrictions of not lifting no more than ten pounds, bending, stooping and standing for a long period of time, no lifting above the shoulders, needed a parking place near the School building to avoid further injuries etc. Because of these restrictions, I requested a reasonable accommodation from the defendants, in which I was denied. I then filed a complaint with the Human rights Commission on which founded that the Defendants discriminated against me, and issued a Right to sue in .The Action was brought pursuant to 42 U.S C 12111(8)) and various pendant state Claims.

I returned to work on 26th of September, 2002, and was performing my work without these accommodations , which resulted in extreme pains every day, by taking my teaching books weighing more than ten pounds, walking long distances from the parking lot to the main school building, and performing activities that was against my medical excuse, which led to severe pains at some point, that I had to be sick and be medically excused from work. The Defendants did took away my sick time monies, instead of taking my sick time monies as work related injuries. this has caused me to loose a lot of monies without being refunded and my sick time be put back to its original numbers.

After this action was filed in the Providence Superior Court in , defendants moved it to this Court and also made an offer through my Counsel, Mr. Kenneth D. Haupt, of which I did accept part of that offer and requested the other part , but was never answered by defendants, instead, my Counsel Haupt decided to withdraw on the grounds that defendants have threatened to terminate my Job(Biology) position if I refused the offer. Defendants never did respond to my request for the other part of the offer, instead Defendant discriminated against me again by terminating my Biology teaching Position with out a Just cause. This action for employment discrimination against me was filed with the Human Rights commission, which is now pending. Also was filed with the Rhode island Un-employment, which the R.I. Un-employment founded that Defendant discriminated against me and the I was entitled to Workers benefits, because I did nothing wrong to be terminated.

I requested a reasonable accommodations in order to return to work in August of 2001. The Defendants refused to grant me the reasonable accommodations, and stated that they had knowledge of any accommodation given to me. I did request for more than two times for a reasonable accommodation, and was denied. My doctor did request a restrictions; 'no bending, no prolonged sitting, no lifting over ten pounds, not to work over six hours etc. after numerous request of going back to work with these restrictions. Defendants rejected those restriction for the six hours work, then my doctor only requested that I return to work with limitations of No lifting over ten pounds, no prolong sitting, no bending, etc. Defendants accepted those restrictions as a result, I had to return to work with the restrictions. Defendants never provided any reasonable accommodation by providing a locked and safe drawer a closed parking area, overhead projector, and support to me.

I returned to work from a long Medical leave at Central High School on September 26, 2002, with the understanding that Defendants were going to provide all of the class room materials needed , to avoid me re-injuring my back. Defendant, again refused to give the logistics. The students that I met in my class room were not disciplined, very rude, disrespectful and were totally out of control. After repeated request to Administration about the students' behavior, prove futile. Administration could not control these students, as a result, many of the Ninth grade team were having the same problems as I. Administration completely ignored my various calls and complaint, due to Ms. Decarlo, Principal of Central High School's advance sexual relationship that she has requested of me, and for my refusal, she ms. Decarlo decided to mistreat me. She Ms. Decarlo accused me of violating school rules,despite the fact that there has not been any violations of school rules placed in my personal file. There are no evidence of violations of school rules except that Ms. Decarlo's constant sexual harassment, discrimination, sexual assault on me. Because of my refusal to have a sexual relationship with Ms. Decarlo, she Ms. Decarlo took this time to write false and misleading memorandum to me, of which I responded to each memo written to me.

Between September 26, 2002 to March 4, 2004, I was abused mentally and physically by some of the students in my class. I filed various discipline forms against these students, but Administration did nothing., as a result, these abuses were still on going .because of the lack of support from Administration, because of my refusal to have a sexual relationship with Ms. Decarlo(Principal). Ms. Decarlo used Mr. Metts(Assistant Principal) to get her agenda on me by playing the scare tactics to make me have a sexual relationship with her.

On November 11, 2002, a Student(Johnathan Garcia) threw a pencil knot with iron wrapped inside it on my head while I was teaching the first period class. I wrote Johnathan up, and sent the disciplinary form to administration. Administration did nothing,, and did not respond to my disciplinary form. I was injured and nothing was done to Johnathan Garcia, because, again, of my refusal to have a sexual relationship with Ms. Decarlo. I went to the hospital and did take treatment. I went back to work and required about the disciplinary form against Mr. Garcia, but to no avail. Administration ignored my injury by this student, Garcia. This same student Garcia did a lot of indecency touching and hitting, he qas written up, Administration did nothing. I did filed grievances for Administration lack of support towards.

On March 4, 2003, this same student has a habit of coming to my sixth period class to disrupt, disturb and cause a lot of trouble. He was not a member of the 6th period class, but a Member of the first period class instead. Student Garcia, J, was repeatedly told to leave the class room that he did not belong to, he refused and started walking up and down the class room, disrupting, disturbing and causing a lot of distraction while I was teaching. . after repeatedly telling Mr. Garcia to leave the class room, he decided to leave on his time, at the same time, I called administration more than two times for help, to remove mr. Garcia from the class room, this was to no avail. When mr. Gracia decided to leave the class room he did not belong to, he pushed the Class room door on my shoulder, injuring me for the second time. I wrote a disciplinary form against him, Nothing was done by administration,. Instead, Mr. Gracia, after realizing that he has injured me, decided to tell false statement that I injured him for fear of being expel from school.

Administration did nothing about my injury, I received workers compensation benefits. Ms. Decarlo wanted to get at me for my refusal for sexual relationship with her, called Mr. Garcia's mother and told her to file charges against me, without investigation . I was charged by the Providence Police and went to court. After a three day trial at the Providence District court, I was found not guilty by the Judge. The Judge realized that the students were out of control, not discipline, and that Mr. Garcia did not tell the truth, when he was beatened and hurt by some of his friends the day before march 4, 2003, that he was injured by his friends, playing horse shoe.

On June 23, 2003, the Defendants suspended me without for ten days for allegedly inappropriate physical conduct with the student Garcia on march 4, 2003, despite the fact that I, the teacher was injured by this student, the defendants ignored my injury, caused by student J. Garcia, but, instead suspended me and allowed student Garcia to be free from his misbehavior towards me. Ms. Decarlo, again, took advantage of this situation to get at me, and get her aims accomplished telling Garcia's mother to file charges against. My ten days suspension was appealed and Defendants have yet to bring on the case due to their lack of evidence and discrimination, bias and prejudicial decision against me. My counsel has requested many hearings , but date, defendants have not schedule any hearing.

Defendant requested that I undergo anger management evaluation and counseling , I did provide the management evaluation and counseling. By my Counselor. On august 19, 2003, Defendants transfer me to Harrison street school without placing Ms. Decarlo on administrative leave, pending sexual complaint. I aggrieved the transfer decision. And was denied by an arbitrator, stating that It was better for me and Ms. Decarlo to be at separate places because of the nature of my complaint, that it was in both favors to be apart.

After I filed my complaint with the Human Right Commission in 2001, the Commission did found that defendants discriminated against me on the basis of disability, and failure to accommodate under federal law, and did issued a RIGHT TO

SUE. THE TIME OF DEADLINE WAS DECEMBER 15, 2003. I did filed my suit on December 15, 2003.

On September and October 25th, 2004, the workers compensation denied and dismissed with prejudice . this court decision was appeal. Presently, I am still under medical care.

The legal issues in this case have been produced and I was awarded the RIGHT TO SUE, BECAUSE OF THE DEFENDANT'S DISCRIMINATION AGAINST A DISABLE PERSON, WHO NEEDS A REASONABLE ACCOMMODATION TO BE ABLE TO FUNCTION AND PERFORM HER DAILY ACTIVITIES WITHOUT INJUURY AND PAINS..

## II. ARGUMENT

### A. Standard for Summary Judgment

**Rule 56(c) of the Federal Rules of Civil Procedure states that a motion for summary judgment must be granted if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."** ***Anderson v. Liberty Lobby, Inc.*****, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510 (1986). This circuit has defined a "genuine issue of material fact" as that which " 'might affect the outcome of the suit under the governing law.' In other words, 'in a run-of-the-mill civil case,' the court must ask 'whether a fair-minded jury could return a verdict for the Plaintiff on the evidence presented.'** ***Lipsett v. University of Puerto Rico*****, 864 F.2d 881, 894 (1st Cir. 1988) ((quoting** ***Anderson*****, 477 U.S. at 248, 252, 106 S.Ct. at 2510, 2512)); accord** ***Oliver v. Digital Equipment Corp.*****, 846 F.2d 103, 105 (1st Cir. 1988) ("An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' ") (quoting Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).**

The court must review the record in the light most favorable to the nonmoving party and must indulge all inferences in favor of that party. *Oliver*, 846 F.2d at 105. A grant of summary judgment is improper if there exist any factual issues that needed to be resolved before the legal issues could be decided. Lipsett, 864 F.2d at 895.

On Motion, for Summary Judgement, Courts are obliged to view the faacts, and all reasonable inferences drawn from them in light most favorable to the Non-Moving Party. Burns v. State Police Ass'n of Massachusetts, 230 F 3d 8, 9 (ist Cir, 2000) Mudarra V Vineyards Dev. Corp, 343 F Supp 2d 1116

A Party oppossing Motion for summary Judgement bears the initial burdens of specifying the basis upon which it contends Judgement should be denied and of identifying that portion of the record which, in its opinion, demonstrates the presence of a genuine issue of material fact., once this initial burden is met, the non-moving party has the burden to come forward with specific facts, supported by the evidence in the record, upon which a reasonable Jury could find there to be a genuine fact issue for Trial.

Anderson V Liberty lobby, Inc, 477 U.S. 242, 248, 91 L.Ed.2d.202 106 S. ct 2505(1986)

The expansive Goals of the ADA, the Act drafted in broad language in order to protect a large class of physically impaired individuals from unwarranted discrimination. it was not drafted narrowly to protect only those with the most severe disabilities. Se Arnold v united Parcel Svc., inc. 136 F3d 854, 1998 WL 63505, at 79lst Cir. 19980

## II. THE RECORD HAS GENUINE ISSUE OF MATERIAL FACT.

To be afforded the protection of the american Disabilities Act ("ADA") and the Rhode Island Fair Employment Practices Act, Petitioner has demonstrated that she is a qualified individual with a disability[1]. Plaintiff must be able to in other words Plaintiff must show that she has a disability recognized by these statutes and is able to perform the essential functions of her job as a teacher for the School Department ("Department"), with or without reasonable accommodations. See 42 U.S.C. § 12111(8); Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 24 (1st Cir. 2002). The DISPUTED FACTS SUPPORT THIS CLAIM.

### A. PLAINTIFF IS AN INDIVIDUAL WITH A DISABILITY.

In order to qualify as an individual with a disability, Ms. Francis must show that she suffers from a physical impairment that substantially limits one or more of her major life activities, or that she has a record of or the Department regards her as having such impairment. See 42 U.S.C. § 12102(2). To be "substantially limited in any activity," Ms. Francis must be unable to perform the activity or be significantly restricted as to performance of these tasks. See 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added).

Plaintiff, Francis has shown that Plaintiff, Francis is able to perform the activity or be significantly as to Performance of these tasks with or without a Reasonable Accommodation

My disability is recognized by these statues and that I am able to perform the essential functions of my job as a teacher at PSB, with reasonable accommodations. 42 U.S.C. $ 12111(8)); Gillen, v. Fallon Ambulance Service Inc., 283 F. 3d 11, 24 (1st Cir. 2002) I have fulfill my burden and is therefore protected by the ADA.

[1] In its definition of "disability," the Rhode Island Fair Employment Practices Act ("FEPA") includes "any disability which is provided protection under the Americans with Disabilities Act." R.I. Gen. Laws § 28-5-6(4). Thus, any reference to the "ADA" in this document applies to FEPA as well. The Rhode Island Civil Rights Act, also set forth as a basis for Ms. Francis's claim, follows state and federal employment law. See Rathbun v. Autozone, 361 F.3d 62, 71 (1st Cir. 2004).

The United States Supreme Court has determined that to be "substantially limited," an individual's impairment must prevent or severely restrict her from doing activities that are of "central importance to most people's daily lives. The impairment must also be permanent or long-term." See Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). In Toyota, the Court found that a medical condition that caused an individual "to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances," simply did not constitute a substantially limiting condition, because "these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual-task disability as a matter of law." Id. at 202.

Plaintiff, Francis suffered from a physical impairment, that shows that such impairment meets the definition of a "disability" set forth in Toyota. It appears plain from the Medical Excuse submitted by Dr. Huntington on my behalf, dated August 22, 2002, Please see Exhibit [illegible] I am "substantially limited" in any major life activity. Consequently, I am "disabled" within the meaining of ADA. see id, at 195.

B. PLAINTIFF FRANCIS IS AN INDIVIDUAL WITH A DISABILITY, I AM 'QUALIFIED' INDIVIDUAL WITH A DISABILITY.

Plaintiff, Francis is disabled under the ADA, the depatment was required to accommodate me as requested because plaintiff Francis was able to perform the essential functions of her Biology position, and accordingly, was a qualified individual with a disability.

plaintiff, Francis has shown, not only that she suffers from a disability, but also that she is a "qualified individual.' Lucero v hart, 915 F 2d 1367, 1371 9th(Cir. 1990). plaintiff h ave established (1) that she "satisfies the requisite skill, experience, education and other Job-related requirements of the employment, Biology position I hold, which is UNDISPUTED (2) that with or without reasonable accommondation, I can perform the essential functions of her Biology position. 29 C.F.R. 1630.(2(m), see Foreman v Babcock & Wilcox Co., 117 F.3d 800, 807-09(5th Cir. 1997)

Lueero V Hart 915 F 2d 137, 1371(9th Cir. 1990)

Plaintiff Francis is a qualified Individual with a disability, who was able to perform the essential functions of the position, with or without reasonable accommondation. The disputed over this issue, therefore, is material to appellant' cause of action and can not be resolved as a matter of Law based on the Record.

plaintiff was able and willing to perform the essential functions of her Job, with or without reasonable Accomondation, which must be resolved by a fact finder Wanted and have the ability to work. Hendry v GTE North, Inc, 896 F Supp 816

## I. REQUEST TO ARRIVE ONE HALF HOUR LATE DAILY

To be protected by the ADA, Plaintiff Francis has demonstrated not only that she has a disability but also that she can perform the essential function of her Biology position, with or without reasonable accommodation (and hence is a "qualified person with a disability". See 42 U.S.C. § 12111(8). The essential functions of a position are the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n).[2] The ADA does require that employers, as a reasonable accommodation, eliminate essential functions of the employee's position. See Feliciano v. State of Rhode Island, 160 F.3d 780, 785 (1st Cir. 1998); see also Davis v. Florida Power & Light Co., 205 F.3d 1301 (11th Cir 2000).

An employee who cannot meet the attendance and timeliness requirements of the job at issue cannot be considered a "qualified individual protected by the ADA." See Earl v. Mervyns, 207 F.2d 1361, 1366-67 (11th Cir. 2000); Tyndall v. Nat'l Educ. Centers, Inc. of California, 31 F.3d 209, 213 (4th Cir. 1994); Flocker v. Sparrow Hosp., 2003 U.S. Dist. LEXIS 9667 (W.D. Mich. 2003); Salmon v. Dade County School Bd., 4 F. Supp.2d 1157 (S.D. Fla. 1998). An inability to arrive at the beginning of the workday thus constitutes an inability to perform an essential function of the job.

Plaintiff requested that she be permitted to arrive at School one-half hour late each day. plaintiff show that her need to arrive late was driven by or related to her medical condition. , however, when Plaintiff's Doctor, Huntington give a medical excuse dated August 22, 2002, amending the previous medical excuse of 13 November 2001 from Dr. Huntington. Plaintiff showed this by returning to work with Restriction, as per Medical Excuse dated 8-8-2002. Exhibit "9" of which Defendants accepted before Plaintiff's return to work on September 26, 2002. Plaintiff upon returned to work on September 26, 2002 to March 5, 2003, Plaintiff willingly perform the essential function of her job with or without Acoomondation, WENT TO HER JOB ON TIME EACH DAY, WAS NEVER TARDY SINCE HER EMPLOYMENT IN 1995, AS WELL AS HER RETURNED TO WORK FROM SEPTEBER 26, 2002 TO MARCH 5, 2003. This, however, Plaintiff claim MUST NOT FAIL BECAUSE TIMELINESS IS AN ESSENTIAL FUCTION OF THE JOB OF HIGH SCHOOL TEACHER, AND PLAINTIFF HAS PERFORM THIS WITH OR WITHOUT ACCOMMONDATION AND HAS MET THE QUALIFICATION OF AN INDIVIDUAL WITH A DISABILITY., THUS, PLAINTIFF FRANCIS IS A "QUALIFIED" INDIVIDUAL WITH A DISABILITY. Exhibits 2 & 3

---

[2] Factors to examine in determining whether a job duty is essential include: whether there is a limited number of employees who can perform the job, 29 C.F.R. § 1630.2(n)(2)(ii); the employer's judgment regarding which functions are essential, 29 C.F.R. § 1630.2(n)(3)(i); the consequences of not requiring the individual to perform the duty, 29 C.F.R. § 1630.2(n)(3)(iv); and the work experience of others in the same position, both past and present, 29 C.F.R. §§ 1630.2(n)(3)(vi), (vii).

[3] Ms. Francis did not personally request that she be permitted to arrive one-half late each day; rather, the note from Dr. Huntington, dated 4 June 2002, makes such request on her behalf. Dr. Huntington also appears to have signed a note, dated 13 November 2001, in which the following is written: "6 hrs a day max." (Zimmerman Aff. at ¶ 23 & Exhibit 10). Generously construed, this note, in conjunction with the June 2002 letter, suggests that Ms. Francis was requesting that she be permitted to work no more than six hours per day. As discussed infra, the high school teachers' day extends from 8:15 a.m. to 2:45 p.m. It bears emphasizing, however, that no teacher is on duty for this entire period of time. Under the collective bargaining agreement, teachers each day have a one-half hour lunch break, with no responsibilities, CBA Art. 8-2-2, and one unassigned period, during which they need not even be present in the building. See CBA Arts. 8-4.2 & 8-4.4. (Zimmerman Aff. at ¶ 23 & Exhibit 11). Hence, the amount of time teachers must actually be "on duty" during the day on any given day is less than six hours.

Plaintiff met the atte...ance and timeliness requirements the job at issue can be considered a "qualified individual protected by the ADA" See

An ability to arrive at the begining of the workday thus constitututes an ability to to perform an essential function of the job.

Plaintiff, Francis Medical excuse by Dr Huntington dated on 13th November 2001 requesting that I arrived at School one-half hour late each day, was due to Ms. Francis's medical condition, not to be pushed or harmpered by lots of students around the hall and other places at shool before the begining of the morning school bell, which interm would have prevented Plaintiff, Francis from being RE-INJURED and subsequently placed Ms Francis in a paralytic position, when she is push or hit by any students, causing her to fall again. However, A medical excuse by Dr. Huntington, dated August 22, 2001, DISPUTE THIS ASPECT OF THE ARRIVE-ONE HALF HOUR LATE EACH DAY. PLAINTIFF FRANCIS APPEARED TO WORK ON SEPTEMBER 22, 2002, TO MARCH 5, 2004. WENT TO WORK ON TIME EVERY DAY, WAS NEVER, EVER LATE, TARDY NON LATE. Please see Exhibit " " Plaintiff claim must not fail, because timeliness is an essential function of the Job of a High School Biology teacher, and Ms. Francis did appeared to work on time, and perform her duty as a Biology Teacher, but only needed a reasonable accommondation to perform her duty without Re-ijury. Plaintiff Francis is thus a "qualified" individual with a disability.

Rivera V. DanGig, (Sec. of the nancy, israel), 234 F. 3d 790

Arnold V United Parcel Service, Inc. 136 F 3d 854 (lst Cir 1998)

The Salmon v Dad County School Bd. is not right on point. Plaintiff, Francis has already taught her Biolgy teaching at the job by arriving on time, THEREFORE NEEDED NO REASONABLE ACCOMMODATION TO BE ON TIME, BUT RATHER NEEDED A REASONABLE ACCOMMONDATION TO PERFORM HER ESSENTIAL PORTION OF HER BIOLGY POSITION, OF WHICH HAS BEEN DENIED BY DEFENDANTS.

ALL CASES CITED BY DEFENDANTS ABOUT THE ASPECT OF THE ARRIVE-ONE HALF HOUR LATE EACH DAY IS UNDISPUTED, BECAUSE PLAINTIFF'S RETURNED TO WORK ON SEPTEMBER 26, 2002 TO MARCH 5, 2003 HAVE SATISFIED THIS ASPECT, BECAUSE PLAINTIFF, FRANCIS HAS WORKED AS WAS REQUIRED BY THE ARRIVED- ONE- HALF HOUR LATE EACH DAY. DEFENDANTS NEVER COMPLAINED, NON DID DEFENDANTS FILED ANY DISCIPLINE DOCUMENTATION IN PLAINTIFF'S PERSONAL FILE FOR ARRIVING LATE, TARDY OR OTHER. DEFENDANTS HAVE THE TRUTH OF THIS ASPECT, BUT ARE IN A DEPARATE SITUATION OF NOT TELLING THE TRUTH, BUT TRIED TO MAKE FALSE AND MISLEADING INFORMATION, JUST TO AVOID GRANTING A REASONABLE ACOOMMONDATION TO PLAINTIFF. THEREFORE, THIS ISSUE IS MOOT.

2. REQUEST FOR FULL-TIME AIDE

PLAINTIFF FRANCIS also requested a full timde aide. This is a reasonable accommodation The purpose of a and the teacher. //// Plaintiff Francis physical condition fell within the exceptionality.

The Defendants have indeed granted such reasonable accoomodation to other Teachers and have denied Plaintiff the same. Please see Exhibit " " Defendants have not granted such reasonable accommodation.

plaintiff Francis was not afforded all the assistance legally required-then-some-to perform her job. This was shown through those Exhibits, expectially Exhibits 14A___. That I have worked and have earned such a high income that it seems that I have worked over twenty five years in Us. I want to work, but I can not jeobardize and compromise my HEALTH, just to satisfy Defendants as well as the students, and at the same time putting both me and the students in harm's way. I will have to do the right thing about my health, without a good health, one can not perform a good essential job, without causing great harm to those that will be affected.

## INTENTIONAL INFLICTIONAL OF EMOTIONAL DISTRESS

**The elements of the tort of intentional infliction of emotional distress are: (1) defendants' conduct is extreme and outrageous; (2) plaintiff suffers severe emotional distress; and (3) defendants knew that severe emotional distress was certain or substantially certain to result from such conduct. Intentional infliction of emotional distress claims are allowed only in narrow circumstances. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show that the individual defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. It is not enough that the defendants acted with an intent which is tortious or even criminal, or even that their conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. In addition, the individual defendants must intend that their conduct inflict severe emotional distress or know that there is a high probability that their conduct would cause severe distress.**

The Defendants intended their conduct inflicted severe emotional distress and knew that there is a high probability that their conduct would cause severe distress. Harriston V. chicago Tribune Co., 992 F.2d 697, 703 (7th cir. 1993)

Piech v Arthur Anderson & Co, S.C. No 93 C 3801, 1994 WL

## INTENTIONAL INFLICTIONAL OF EMOTIONAL DISTRESS

Plaintiff has Under Gone Intentional Infliction Distress by Defendants' Actions, By Not Providing the Reasonable Accommondation to me, to avoid a RE-INJURING OF MY EXISTING INJURIES. DEFENDANTS MADE A CHOICE NOT TO PROVIDE ME THE REASONABLE ACCOMMODATION, INSTEAD, DEFENDANTS MADE THE CHOICE TO PROVIDE OTHER TEACHERS, AS WELL AS OTHER EMPLOYEES THE SAME REASONABLE ACCOMMODATION DENIED ME. DURING THE SAME YEAR, AND SOMETIMES THE SAME DATES THAT DEFENDANTS DENIED ME THE REASONABLE ACOMMONDATION, DEFENDANTS GRANTED OTHERS THE REASONABLE ACCOMMODATION.DEFENDANTS IN VIOLATIONS OF THE AMERICANS EITH DISABILITIES ACT(ADA),42 U.S.C.S. C 12111 et seg.

Exhibits: 9, 14A & 14E, 15E & 15F
9A

LIABILITY

Plaintiff acquired loss of income due to the defendants' denial of a Reasonable Accommodation. By denying plaintiff of a Reasonable Acommondation, Plaintiff sustained RE-INJURING OF HER EXISTING INJURIES. DEFENDANTS HAVE SINCE YET TO COMPENSATE PLAINTIFF FOR THE LOSS OF INCOME DUE TO THE VARIOUS INJURIES SUSTAINED, INSTEAD, DEFENDANTS WITHHELD PLAINTIFF'S SALARIES AND REFUSED TO GIVE PLAINTIFF BACK HER MONIES, LEAVING PLAINTIFF WITHOUT PAYMENT DUE HER. Exhibit S " 14 & 14A

DEFENDANTS ARE POTENTIALLY LIABLE IN THEIR INDIVIDUAL CAPACITIES, UNDER THE

("ADA"), TITLE VII, OR THE ("ADEA"). Price v. Marshall Erdman & Assoc, Inc, 966 F.2d 320, 324(9th Cir.

1992) Gaddy V. Abex Corp, 884 F.2d 312, 318-19 (7th Cir, 1989)(Title VII Case).

DEFENDANTS ARE LIABLE, Pommier V. james L Edelstein Enterprises, 816 F. Supp, 476, 480-81(N.D. Ill.

1993), Weiss V. Coca-Cola Bottling Co., 772 F. Supp, 407, 410-11(N.D. Ill. 1991), Strzelecki V. Scharz Paper

Co., 824 F. Supp, 821, 829(N.D. 1993).

AS THIS COURT NOTED IN STRZELECKI "

As this court noted in Strzelecki, if the people who make discriminatory decisions do not have to pay for them, they may never alter their illegal behavior and the wrongdoers may elude punishment entirely, while the victim may receive no compensation whatsoever. That outcome is incompatible with the broad remedial purposes of the ADEA and Title VII, which were intended to provide all "necessary relief" and to ensure "complete justice."

16

ILLEGAL TERMINATION OF PLAINTTIFF'S EMPLOYMENT.

THE PLAINTIFF HAS STATED IN HER MOTIONS TO THIS COURT, INFORMING THIS COURT THAT THE ILLEGAL TERMINATION OF PLAINTIF'S EMPLOYMENMT BY DEFENDANTS SHOULD NOT BEFORE THIS COURT. ON GROUNDS, THAT THE TERMINATION COMPLAINT OR CASE IS PRESENTLY BEFORE THE HUMAN RIGHTS COMMISSION OF RHODE ISLAND , AS WELL AS BEFORE THE PROVIDENCE SCHOOL BOARD, AND ALSO HAS BEEN APPEALED BY PLAINTIFF'S COUNSEL, MR. JOHN DESIMONE, WHO REPRESENTS PLAINTIFF IN THE MATTER OF PLAINTIFF'S EMPLOYMENT TERMINATION. SHOULD THIS COURT DECIDES NOT TO GRANT MY MOTION ON THIS ISSUE OF MY EMPLOYMENT TERMINATION, IT SHOUD LOOK INTO THE CASE; SMITH V. DAVIS, 248 F. 3D 249. IN THIS CASE, A GRANT OF EMPLOYER'S MOTION FOR SUMMARY JUDMENT WAS REVERSED ON EMPLOYMENT DISRIMINATION CLAIMS, SINE THE RECORD RAISED ISSUE OF FACTS AS TO WHETHER PLAINTIFF'S TERMINATION WA FOR NON-DISCRIMINATORY REASONS OR WHETHER IT WAS PRETEX FOR DISCRIMINATION. ACCORDINGLY, PLAINTIFF IS NOT REPRESENTING HER SELF AS A PRO-SE PLAINTIFF IN THIS EMPLOYMENT TERMINATION CASE, BUT RATHER IS REPRESENTED BY A COUNSEL, DESIMMONE.

AS A RESULT. THIS COURT SHOULD NOT MAKE ANY DECISION AS PER REQUESTED, INSTEAD DO THE LEGAL THING FOR A FAIR JUSTICE ON THIS ISSUE. Exhibit 16

Plaintiff's Disputed facts @ 8A and Plaintiffs Affidavit @ 55. The facts are not All presented by both the Defendants & Plaintiff

 17

CONCLUSION,

The plaintiff has raised genuine issue of material fact. The plaintiff therefore asks that this Court deny Defendants' Motion for Summary Judgment, and therefore sent this case to the Jury to decide this case, as a fact finder, instead of the Court.

RESPECTFULLY SUBMITTED:
NELLIE S. FRANCIS
PLANTIFF PRO-SE.
16 MILLER AVENUE
PROVIDENCE, R.I. 02905
(401)461-2918

CERTIFICATION

I hereby certify that I mailed a copy of the within MotionS, Of Summary Judgment Opposition to On April 13, 2005 to
Sara A. Rapport
Senior Assistant City Solicitor
275 Westminster Street, Suite 200
Providence, Rhode Island 02903-1845