UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

NELLIE FRANCIS,
Plaintiff

v. C.A. No. 04-04-T

PROVIDENCE SCHOOL BOARD,
Defendant

MEMORANDUM AND ORDER

ERNEST C. TORRES, Chief United States District Judge.

INTRODUCTION

Nellie Francis ("Ms. Francis"), acting pro se, brought this action against the Providence School Board (the "School Board") claiming violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and various Rhode Island statutes prohibiting employment discrimination which mirror either the provisions or elements of the ADA. The essence of her claims is that the School Board failed to make reasonable accommodation for her alleged disabilities.

The School Board has moved for summary judgment and, for reasons hereinafter stated, that motion is granted.

BACKGROUND FACTS

Ms. Francis was a high school biology teacher in the Providence school system from November 1995 until June 2004. Although Ms. Francis is acting pro se and has some difficulty with the English language, she is no stranger to legal and quasi legal

proceedings. During her tenure as a public school teacher, Ms. Francis filed "various discipline forms" against students alleging they abused her mentally and physically; accused the high school principal of sexually harassing and assaulting her; and was acquitted of a charge that she assaulted a student.

In addition, Ms. Francis recently brought at least two unrelated cases in state court against an insurance company and a neighbor. See, Francis v. American Bankers Life Assur. Co., 861 A.2d 1040 (R.I. 2004), and Francis v. Brown, 836 A.2d 206 (R.I. 2003). In American Bankers, Ms. Francis sought benefits under a disability insurance policy due to an alleged back injury but the insurance company denied benefits on the ground that Ms. Francis's application did not disclose that she had previously been treated for back problems by a chiropractor. Id. at 1042-43. The court found that there was a "total absence of proof sufficient to support any of plaintiff's claims." Id. at 1045. In Brown, Ms. Francis sued for injuries to herself, her children, her dog, and her elderly mother, as well as for damage to her fence, two vehicles she did not own, the cement floor of a torn-down garage, a swing set, and a dog house that she alleged resulted from a neighbor's negligent failure to maintain trees on his property. Id. at 208. The Rhode Island Supreme Court affirmed the entry of judgment as a matter of law against Ms. Francis and upheld an award of attorney fees against her based on her failure to comply with

several court orders and numerous objections that she filed for inappropriate and improper purposes. Id. at 212.

The origins of this case can be traced back to October 5, 1998, when Ms. Francis claims she was injured by three students who pushed her down a flight of stairs at Hope High School. She was diagnosed as having cervical spinal stenosis and she remained out of work for the next four and a half years. During that time, she received worker's compensation benefits and the School Department did not fill her teaching position.

In 2001, the School Department, apparently, began pressing Ms. Francis about her status and, on November, 13, 2001, she presented a note from Dr. Christopher Huntington which stated that Ms. Francis could return to work on November 26, 2001, with the following restrictions: "no lifting over 10 lbs., no bending, no prolonged sitting. 6 hrs a day max. teachers aide should be available." (emphasis in original). However, nothing further happened until the following April when Ms. Francis submitted an "Accommodation Request Form" to the School Department which stated:

> I have a [sic] cervical and neck injuries. I cannot bend [sic] stoope [sic] or stand for a long time. I need someone to help if in need of bending, stooping, or reaching as high above my shoulders. No lifting over 50 lbs.

Jose Gonzalez, the School Department's Director of Human Resources, responded with the following note:

> According to the information reviewed by the committee, you have applied for a State Disability claim. Based on

> the medical documentation, it is clear that you are unable to perform the essential duties and responsibilities needed as a teacher. The committee is unable to grant your request (per Doctor's note) to limit your work duties to 6 hours per day. We also cannot grant you a Teacher Assistant.
>
> Once you are medically cleared to return to work, please let us know if you will need an accommodation.

Shortly thereafter, Dr. Huntington sent a letter to Mr. Gonzalez stating:

> Nellie is cleared to return to work with the following limitations on her activities: no lifting over 10 pounds, no bending and no prolonged sitting as specified on 11/13/01 previously. She should be allowed to arrive at work approximately 30 minutes after the initial opening time. She should, however, be able to leave at her regular end-of-day time. She should be provided an assistant whenever any lifting or bending will be required.

On July 2, 2002, Mr. Gonzalez again wrote to Ms. Francis informing her that "[b]ased on the information we received, the committee felt they could not provide you with the accommodations requested because we are unable to alter your work schedule and reduce the number of hours you are contractually expected to work," but that "[s]hould you need assistance lifting materials once you return to work, please contact the main office for a custodian to assist you."

On September 26, 2002, Ms. Francis returned to work after presenting another note from Dr. Huntington requesting that Ms. Francis be assigned a classroom with a sink and benches and a parking space closer to the school building.

On October 22, 2002, Mr. Gonzalez sent a third and final note to Ms. Francis, which stated:

> No accommodation needs to be made on the school department's behalf. The Principal has however agreed to have someone assist you when needed in moving any objects weighing more than 10 lbs.
>
> As for the doctor's note regarding standing and sitting, we felt that is arbitrarily [left] up to your discretion. We have no policies or restrictions that you prohibit you [sic] from teaching while sitting or standing.
>
> Based on the information we received, the committee felt they could not provide you with any other accommodations.

Ms. Francis worked from September 2002 until March 2003, when she was suspended for allegedly assaulting a student.[1] Her suspension ended on September 10, 2003, but she failed to report to work on September 11, 2003, as ordered. In fact, she stayed out of work for eight months, telling the School Board that she was on "medical leave" and "not medically excused to go to work."

On January 7, 2004, Ms. Francis commenced this suit and on May 4, 2004, the School Department threatened to terminate her for job abandonment if she did not report to work on May 10, 2004.

On May 10, 2004, Ms. Francis arrived at her school but reported that she was ill as a result of taking Valium and Oxycontin that morning and was transported to Rhode Island Hospital. Apparently, Ms. Francis never returned to work and, on

[1]Ms. Francis later was acquitted of criminal charges relating to this incident.

June 21, 2004, the School Board terminated her employment for persistently failing/refusing to report to work.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). All inferences in the record must be resolved in favor of the non-movant. Guzman-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 9 (1st Cir. 2005). However, once the moving party has asserted that no genuine issue of material fact exists, the opposing party must point to specific facts to demonstrate a trialworthy issue. Calero-Cerezo, 355 F.3d at 19. Improbable inferences, conclusory allegations, or rank speculation are not sufficient to defect a motion for summary judgment. Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st. Cir. 2004).

ANALYSIS

I. ADA

The ADA requires an employer to provide reasonable

accommodations necessary to enable an individual with a disability to perform a job that the individual, otherwise, is qualified to perform unless providing the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); see Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001). In order to prevail on a claim for failure to reasonably accommodate, a plaintiff must prove that (1) he is disabled within the meaning of the ADA; (2) he was able to perform the essential functions of the job with or without a reasonable accommodation; and (3) the employer, despite knowing of the disability, did not reasonably accommodate it. Estades-Negroni v. Assoc. Corp. of N. Am., 377 F.3d 58, 63 (1st Cir. 2004).

II. DISABILITY

In order to establish that she was disabled within the meaning of ADA, Ms. Francis must show that she had a physical or mental impairment that substantially limited one or more major life activities. 42 U.S.C. § 12102(2)(A). An impairment is substantially limiting if it "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).

Ms. Francis has presented evidence that she suffers from cervical spinal stenosis as well as neck and back pain and that her condition prevents her from bending, prolonged sitting and lifting

objects weighing more than 10 pounds. However, she has not provided any evidence regarding how these restrictions substantially limit any major life activities. See Toyota, 534 U.S. at 198 (requiring substantial limitations proven by evidence regarding personal experience).

Even if bending, sitting and lifting, themselves, are viewed as major life activities, the limitations described by Ms. Francis do not rise to a level that could be described as substantial. She is able to sit as long as she does not remain seated for protracted periods and she is able to lift objects weighing less than 10 pounds.

III. REASONABLE ACCOMMODATION

Even assuming, arguendo, that Ms. Francis is disabled, the School Board reasonably accommodated her known impairments.

An individual seeking an accommodation is required to make a request that is "sufficiently direct and specific" to inform the employer what accommodation is needed. Calero-Cerezo, 355 F.3d at 23. "At the least, the request must explain how the accommodation requested is linked to some disability." Reed, 244 F.3d at 261.

The purpose of a reasonable accommodation is to allow a qualified person with a disability to perform a job in the same manner as an employee without a disability. See 29 C.F.R. § 1630.2(o)(1). However, the employer is not required to provide an accommodation that would be unduly burdensome. Reed, 244 F.3d at

259. Thus, in order to qualify, the requested accommodation must be both related to an individual's disability and it must not impose an unreasonable burden on the employer.

The individual requesting an accommodation bears the burden of establishing that a reasonable accommodation can be made. Reed, 244 F.3d at 259. However, the employer is not necessarily required to offer "the accommodation sought." Bryant v. Caritas Norwood Hospital, 345 F.Supp. 2d 155, 169 (D.Mass. 2004) (emphasis in original). When accommodation is required, the employer has the option of providing any accommodation that is "effective." Id. at 169-70; 29 C.F.R. § 1630.9 App. ("employer providing the accommodation has the ultimate discretion to choose between effective accommodations").

In this case, the accommodations requested by Ms. Francis were that she be permitted to arrive thirty minutes late each day; that she not be required to lift more than 10 pounds or to bend; that she not be required to sit or stand[2] for prolonged periods; that she be provided with a full-time teaching assistant and a parking space closer to the building; and that her classroom be equipped with a sink.[3] However, there was no need for the School Board to

[2]In one of her notes to the School Department, Ms. Francis said that she couldn't stand for prolonged periods but none of the doctor's notes mention this.

[3]In her memo, Ms. Francis lists other desired accommodations but there is no evidence that they were even communicated to the School Board. (See Exhibit 7 regarding request for chair,

accommodate Ms. Francis's alleged inability to bend or sit or stand for prolonged periods because, as Mr. Gonzalez's October 22, 2002, letter pointed out, it was entirely up to Ms. Francis to decide whether she performed her duties standing, sitting or bending.

With respect to Ms. Francis's request that she be allowed to arrive 30 minutes late each day and to have a parking space closer to the building or have her classroom equipped with a sink, she has failed to explain how the requested accommodations were necessitated by or connected to her alleged disability. Furthermore, the request that she be allowed to arrive one-half hour late each day would have involved modifying an essential function of her job and would have imposed an undue hardship on the School Board by requiring it to hire someone to cover for her.

The School Board did accommodate Ms. Francis's alleged inability to lift objects weighing more than 10 pounds by informing her that it would make a custodian available to lift such objects for her upon request. In light of that accommodation, it is difficult to see any basis for a full-time assistant let alone the justification for requiring the School Board to radically restructure the job requirements and incur the additional expense involved in hiring a full-time aid. An employer's obligation to

---

Exhibit 8 regarding overhead projector). Since an employer cannot be expected to make an accommodation that is not requested (See Reed, 244 F.3d at 261), these accommodations cannot be considered.

make reasonable accommodations does not require the employer to rewrite the essential elements of a job description or to reallocate those functions to other workers. See Feliciano v. Rhode Island, 160 F.3d 780, 785 (1st Cir. 1998).

In short, the School Board did provide all of the reasonable accommodation that was required under the circumstances.

CONCLUSION

For all of the foregoing reasons, the School Board's motion for summary judgment is granted.

It is so ordered.

Ernest C. Torres

Ernest C. Torres

Date: Sept. 1, 2005